# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON DIVISION

| | | |
|---|---|---|
| POLY-MED, INC., | ) | Civil Action No: 8:15-cv-01964-JMC |
| Plaintiff | ) | |
| v. | ) | **ORDER AND OPINION** |
| NOVUS SCIENTIFIC PTE. LTD, | ) | |
| NOVUS SCIENTIFIC, INC. and | ) | |
| NOVUS SCIENTIFIC AB, | ) | |
| Defendants | ) | |

Plaintiff Poly-Med, Inc. ("Poly-Med"), filed this action against Novus Scientific Pte. Ltd. ("Novus Singapore"), Novus Scientific, Inc. ("Novus USA"), and Novus Scientific AB ("Novus Sweden") (collectively "Novus Defendants") seeking monetary damages, injunctive, and equitable relief. (ECF No. 1.)

This matter is before the court pursuant to Novus Sweden's Motion to Dismiss for Lack of Jurisdiction, Insufficient Service of Process, and Forum Non Conveniens (ECF No. 16); Novus Singapore's Motion to Dismiss for Lack of Jurisdiction, Insufficient Service of Process, and Forum Non Conveniens (ECF No. 17); and Novus USA's Motion to Dismiss for Lack of Jurisdiction (ECF No. 18).[1]  Poly-Med opposes the aforementioned Motions of Novus Defendants. (ECF Nos. 35, 38, 39.) For the reasons set forth below, the court **DENIES** Novus Defendants' Motions to Dismiss for Lack of Jurisdiction and **DENIES** Novus Singapore and Novus Sweden's Motions to Dismiss for Insufficient Service of Process and Forum Non Conveniens.

---

[1] Each of the Novus Defendants filed a separate Motion to Dismiss asserting substantially the same arguments for dismissal for lack of jurisdiction. However, Novus USA does not seek dismissal for insufficient service on a foreign corporation or forum non conveniens.

## I.  JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Poly-Med's allegations that the action is between citizens of different states and/or countries and the amount in controversy is in excess of $75,000.00.  (ECF No. 1 at 1 ¶ 1–2 ¶ 4, 3 ¶ 6.)  Specifically, Poly-Med alleges that it is a South Carolina corporation with its principal place of business in Anderson, South Carolina; Novus Singapore is a Singaporean corporation with its principal place of business in Singapore; Novus USA is a Delaware corporation with its principal place of business in San Diego, California; and Novus Sweden is a Swedish corporation with its principal place of business in Uppsala, Sweden.  (Id.)  In this regard, the court is satisfied that complete diversity exists between the parties and the amount in controversy is sufficient.

## II.  RELEVANT BACKGROUND TO PENDING MOTIONS

Poly-Med is a South Carolina corporation that "designs, develops, and manufactures products and materials [out of bio-absorbable and biodegradable polymers] for use in medical, pharmaceutical and biotechnology applications."  (ECF No. 1 at 1 ¶ 1 & 3 ¶¶ 8–9.)  On or about June 8, 2005, Poly-Med alleges that it entered into a Sale of Materials and License Agreement (the "Agreement") with a Swedish company, Radi Medical Systems, AB ("Radi").  (Id. at 3 ¶ 13.)  The Agreement required Poly-Med to develop and manufacture at least 6 different proprietary absorbable surgical meshes for use in hernia repair in human patients.  (ECF No. 35-2 at 2 ¶ 10.)  "Under the Agreement, Radi was to compensate Poly-Med for its development work, manufacturing and production of the mesh that took place exclusively in South Carolina."  (Id. at ¶ 11.)

In December 2008, Radi transferred its rights under the Agreement to either Novus

Singapore or Novus USA.[2]  (Id. at 3 ¶ 15; ECF No. 16-1 at 3 ¶ 6.)  On or about February 27, 2013, Novus Singapore transferred its interest in the Agreement to Novus Sweden.  (ECF No. 16-1 at 3 ¶ 7.)  Poly-Med alleges that sometime after assignment of the Agreement to either Novus Singapore or Novus USA, Novus Defendants breached the Agreement by using the mesh in applications other than hernia repair.  (ECF No. 1 at 10 ¶ 42.)  For example, Novus Defendants allegedly used the mesh in breast reconstruction, which usage "is not authorized by Poly-Med and is in violation of the Agreement."  (Id. at 11 ¶ 48.)

As a result of the aforementioned breach of the Agreement, Poly-Med filed a Complaint against Novus Defendants in this court on May 8, 2015, alleging claims for breach of contract, tortious interference with contract, violation of the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 to -130 (2014), and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 to -560 (2014). (ECF No. 1 at 13–25.)  Novus Defendants filed their Motions to Dismiss on July 2, 2015.  (ECF Nos. 16, 17, 18.)  Poly-Med filed Memoranda in Opposition to the Motions to Dismiss  (ECF Nos. 35, 38, 39) on July 30, 2015, to which Novus Defendants submitted Replies in Support of the Motions to Dismiss on August 24, 2015.  (ECF Nos. 47–49.)

On November 12, 2015, the court heard argument from the parties on the pending Motions to Dismiss.  (ECF No. 62.)

### III.    LEGAL STANDARD AND ANALYSIS

A.    Motion to Dismiss for Lack of Jurisdiction

   *1. The Parties' Arguments*

Novus Defendants collectively move for dismissal of the Complaint for lack of personal

---

[2] Poly-Med asserts that it was told that the Agreement was assigned to Novus Singapore, but later Poly-Med was provided a copy of a "Transfer Agreement" which revealed that the Agreement was transferred from Radi to Novus USA. (ECF No. 35-2 at 3 ¶¶ 14–15.)

jurisdiction. (ECF Nos. 16 at 7, 17 at 7 & 18 at 5.) In support of their Motions to Dismiss, Novus Defendants submitted Declarations from Thomas Engström, the Chief Executive Officer ("CEO") of Novus Singapore, Stefan Sowa, the CEO of Novus Sweden, and Tac-Whei Ong, the President of Novus USA. (ECF Nos. 16-1, 16-2, 16-3.) Through these Declarants, Novus Defendants assert that they do not and have never (1) owned real or personal property in South Carolina; (2) maintained telephone service or bank accounts in South Carolina; (3) had any employees who resided in South Carolina; (4) maintained an office in South Carolina; (5) had sales representatives who resided in South Carolina; (6) had any shareholders, directors, or officers who resided in South Carolina; (7) conducted any meetings of their boards or their officers or their shareholders in South Carolina; (8) engaged in direct marketing of products to South Carolina residents; (9) maintained a customer relations network for customers in South Carolina; (10) filed or been required to pay taxes in South Carolina; (11) appointed anyone to accept service of process on their behalf within South Carolina; (12) been licensed to do business in South Carolina; (13) held themselves out as doing business in South Carolina; (14) operated a website from within South Carolina; or (15) transacted any business or made any sales via a website to one or more South Carolina residents. (ECF Nos. 16-1 at 3 ¶ 15–5 ¶ 36, 16-2 at 2 ¶ 4–5 ¶ 35 & 16-3 at 2 ¶ 4–4 ¶ 33.) Based on the foregoing, Novus Defendants assert that they are not subject to general jurisdiction in South Carolina because they lack continuous and systematic contacts with the state. (ECF Nos. 16 at 8, 17 at 8 & 18 at 6.) Moreover, they assert that the exercise of specific jurisdiction is inappropriate because Poly-Med's allegations do not establish that Novus Defendants purposefully availed themselves of the privilege of conducting activities in South Carolina, that Poly-Med's claims arise out of any such activities by Novus Defendants, or that the exercise of jurisdiction would be constitutionally reasonable. (ECF Nos. 16 at 10, 17

at 10 & 18 at 9.)

Poly-Med opposes dismissal of the Complaint asserting that the court has specific personal jurisdiction over Novus Defendants.  In this regard, Poly-Med argues that Novus Defendants all have had substantial contacts with South Carolina over a period of several years and, therefore, they purposefully availed themselves of the privilege of conducting business under South Carolina law.  (E.g., ECF No. 35 at 12.)  In support of this argument, Poly-Med specifies that "[t]he Agreement at issue in this case was originally negotiated by electronic mail messages from and to South Carolina and was executed by Poly-Med in South Carolina[]" (id. at 14); "Most of the performance under the Agreement has taken place at Poly-Med's facility in Anderson, South Carolina[]" (id.);[3] Novus Defendants had direct contact in and with South Carolina by way of e-mails, telephone conference calls, and a website accessible in South Carolina (id. at 16); and South Carolina was the locale of clinical trials and a place of visitation by Novus Defendants' employee personnel (id. at 16–18).

Poly-Med next argues that its claims arise out of Novus Defendants' activities directed at South Carolina.  (Id. at 23 ("Novus USA has used all this South Carolina work, as well Poly-Med trade secrets located in South Carolina, to breach the Agreement by selling and/or distributing the TIGR® Mesh outside the scope of the Agreement.").)  Poly-Med also argues that the exercise of jurisdiction over Novus Defendants under South Carolina's long arm statute is "constitutionally reasonable" because they voluntarily entered into a contract with a South Carolina resident and they have been able to secure local counsel and their "litigation burden . . .

---

[3] The court observes that Poly-Med attempts to strengthen its argument by citing to its own conduct in South Carolina pursuant to the Agreement.  However, the court agrees with Novus Defendants that Poly-Med's fulfillment of its contractual duties in South Carolina does not subject Novus Defendants to personal jurisdiction.  (E.g., ECF No. 47 at 5–6)  It is Novus Defendants' conduct that creates jurisdiction over them.

5

is . . . no more substantial than that encountered by other entities that choose to transact business with residents of South Carolina."  (Id. at 24.)

2. *The Court's Review*

When a defendant challenges the court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), plaintiff has "the burden of proving" that jurisdiction exists "by a preponderance of the evidence."  In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).  "[W]hen [as here]. . . a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge."  Id.; New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of jurisdiction when the court does not conduct an evidentiary hearing).  In deciding whether plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction.  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment.  Magic Toyota, Inc. v. Se. Toyota Distribs., Inc., 784 F. Supp. 306, 310 (D.S.C. 1992).

A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process

Clause of the Fourteenth Amendment. ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012). South Carolina's long arm statute provides as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803 (2005). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997). Therefore, the appropriate question for the court in considering a personal jurisdiction defense raised by a foreign defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum state, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice.")).

Personal jurisdiction may arise through specific jurisdiction or through general jurisdiction. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002). Poly-Med alleges only specific jurisdiction in this case. (ECF No. 35 at 11.) Under specific jurisdiction, a defendant may be sued in this court if the litigation results from alleged injuries

7

that arose out of or related to their contacts with South Carolina and those contacts were sufficient. E.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts should examine "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc., 293 F.3d at 712 (citation omitted). "Failure to satisfy any of the three prongs is fatal to a court's ability to exercise specific jurisdiction." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 405 (D.S.C. 2012) (citation omitted).

### a. Purposeful Availment

"The purposeful availment inquiry is grounded on the traditional due process concept of minimum contacts, which itself is based on the premise that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014) (citation and internal quotation marks omitted). "Thus, in determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, we ask whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Id. (citation and internal quotation marks omitted). "[C]ourts have examined several nonexclusive factors in examining purposeful availment: (1) whether defendant maintains offices or agents in the forum state; (2) whether defendant owns property in the forum state; (3) whether defendant reached into the forum state to solicit or initiate business; (4) whether defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the

law of the forum state would govern disputes; (6) whether defendant made in-person contact with the resident in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." Id. (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).

To counter the aforementioned Novus Defendants' Declarations[4] and to establish their purposeful availment of the privilege of conducting business in South Carolina, Poly-Med submitted the Affidavit of David Shalaby, its President.[5] (ECF No. 35-2.) Through Shalaby's Affidavit, Poly-Med demonstrates that Novus Defendants (1) sent an auditor to South Carolina to conduct audits of "Poly-Med's regulatory compliance, production facilities and quality systems" (id. at 8 ¶ 48), (2) shipped units of packaging and labels to South Carolina (id. at 8 ¶¶ 50–51), (3) sent management personnel to Poly-Med's facility in South Carolina to converse about issues

---

[4] "The plaintiff, however, must present affidavits or other evidence if the defendant counters plaintiff's allegations [of in personam jurisdiction] with evidence that minimum contacts do not exist." Clark v. Remark, No. 92-1682, 1993 WL 134616, at *2 (4th Cir. Apr. 29, 1993) (citation omitted). "Once both parties have presented evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the purpose of determining whether she has made a prima facie showing of jurisdiction." Id.

[5] Novus Defendants requested that the Shalaby Affidavit be stricken pursuant to Fed. R. Civ. P. 56(c)(4) because the information in the Affidavit was based either on Shalaby's personal knowledge or his review of Poly-Med's records. (ECF No. 47 at 3 (citing ECF No. 35-2 at 1 ¶ 2).) Fed. R. Civ. P. 56(c)(4) requires that an affidavit used in support of a motion for summary judgment be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Id. In considering the merits of Novus Defendants' Motion to Strike, the court finds that it is not required at this stage of the litigation to weigh the credibility of each declarant or determine the admissibility of the respective factual information. See Universal Leather, 773 F.3d at 561 ("Given the procedural posture . . . , we do not evaluate the credibility of the statements in affidavits filed on Universal's behalf or address any questions regarding the ultimate admissibility of evidence, nor do we decide whether Universal has proved its contentions. Instead, we are required to determine whether Universal has made at the motion to dismiss stage a prima facie showing that Koro purposefully availed itself of the privilege of doing business in North Carolina, in satisfaction of the first prong of our jurisdictional analysis."). Therefore, Novus Defendants' Motion to Strike the Affidavit of David Shalaby is hereby denied.

related to the Agreement (id. at 9 ¶ 52–11 ¶ 62), (4) sent e-mails and made phone calls to recipients of Poly-Med in South Carolina (id. at 12 ¶¶ 65–66), and sent payments to Poly-Med in South Carolina for development services (id. at ¶¶ 67–68).

In both considering this evidence in the light most favorable to Poly-Med and resolving conflicts in the parties' Affidavits in Poly-Med's favor, the court is persuaded that Poly-Med has established that Novus Defendants did avail themselves of the privilege of conducting business in the forum of South Carolina. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.18 (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.") (citation omitted); dppms, llc v. Starwood Hotels & Resorts Worldwide, Inc., No. CV09-074-N-EJL, 2009 WL 3109810, at *4 (D. Idaho Sept. 23, 2009) (finding purposeful availment where defendant sent emails and interactive conferences to Idaho, sent confidential documents to Idaho, sent representatives to Idaho, and sent checks for payment of services to Idaho); Vig v. Indianapolis Life Ins. Co., 384 F. Supp. 2d 975, 980 (S.D. Miss. 2005) (finding purposeful availment to Mississippi forum when defendants directed a letter "to Mississippi by having addressed it to a Mississippi recipient with the expectation that it would be sent to . . . prospective client in Mississippi."); cf. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 295 (4th Cir. 2009) (finding purposeful availment where foreign defendant reached into the forum state to initiate business with plaintiff and also corresponded and collaborated with plaintiff over an extended period, and made in-person contact with plaintiff twice); Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc., 966 F. Supp. 2d 604, 613 (D.S.C. 2013) (finding purposeful availment where defendant initiated the business relationship in general and also "made in person contact with Campbell at least once to discuss the business relationship; he maintained almost daily communication with Campbell, who was

located in South Carolina, regarding the relationship and the Lowe's program; and he knew Ameristone was to perform its contractual duties mainly in South Carolina."). Therefore, the court concludes that Novus Defendants are subject to personal jurisdiction under the first prong of the specific jurisdiction test.

### b. Directing Activities at South Carolina

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." Consulting Eng'rs Corp., 561 F.3d at 278–79 (citation omitted). Upon review, the court finds that Poly-Med has sufficiently demonstrated that but for Novus Defendants' contacts with Poly-Med in South Carolina and the existing relationship between the parties, Poly-Med's injury would not have occurred. Therefore, the court concludes that Poly-Med's claims arise out of Novus Defendants' activities directed at the forum of South Carolina.

### c. Constitutionality of the Exercise of Jurisdiction

"The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Eng'rs Corp., 561 F.3d at 279 (citation omitted). "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id.

Although Novus Defendants face some burdens in defending against Poly-Med's claims in South Carolina, those burdens neither offend the traditional notions of fair play and substantial

11

justice, nor put Novus Defendants at a severe disadvantage.  Moreover, South Carolina has an interest in the resolution of a lawsuit filed by a citizen like Poly-Med which takes the position that a judgment from a Swedish court would be inconsequential.  As a result, the court finds that the exercise of personal jurisdiction over Novus Defendants would not be constitutionally unreasonable.  Accordingly, the court denies Novus Defendants' Motions to Dismiss for Lack of Jurisdiction.

B.    Motion to Dismiss for Insufficient Service of Process

*1. The Parties' Arguments*

Novus Sweden and Novus Singapore move to dismiss this action because Poly-Med failed "to comply with the requirements of service of process under Rule 4 of the Federal Rules of Civil Procedure."  (ECF Nos. 16 at 19 & 17 at 19.)  Both foreign Defendants argue that Poly-Med's attempted service was insufficient because (1) the registered agent for Novus USA was not authorized to accept service on their behalf and (2) the only papers served on the registered agent for Novus USA were those meant for Novus USA.  (Id. at 20 & 20.)  Novus Sweden and Novus Singapore further argue that Poly-Med's attempt to serve them by way of the South Carolina Secretary of State also fails because they do not conduct business in South Carolina and the litigation does not arise out of their business activities in South Carolina.  (Id. at 21 & 21.)

In response to claims of insufficient service, Poly-Med argues that it has appropriately served Novus Singapore and Novus Sweden through the Secretary of State and pursuant to the service laws of their respective countries.  (ECF Nos. 38 at 28–30 & 39 at 27–29.)  In addition, Poly-Med contends that it appropriately served Novus Singapore through its subsidiary Novus USA. (ECF No. 39 at 29.)

*2. The Court's Review*

The court has the discretion to dismiss a case under Fed. R. Civ. P. 12(b)(5) for

insufficient service of process. Reinhold v. Tisdale, C/A No. 8:06-3311-MBS-BHH, 2007 WL 2156661, at *3 (D.S.C. Apr. 30, 2007) (citing Dimensional Commc'ns, Inc. v. OZ Optics, Ltd., 218 F. Supp. 2d 653, 655 (D.N.J. 2002)). "When personal jurisdiction is challenged as a result [of] alleged improper service, '[a] trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.'" Lail v. United States, C/A No. 3:11-cv-0977-TLW-TER, 2012 WL 3779386, at *6 (D.S.C. Aug. 10, 2012) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). Sufficiency of service of process is generally governed by Fed. R. Civ. P. 4.

Under Fed. R. Civ. P. 4, service of process on a foreign corporation can be accomplished through any one of several methods, including: (1) service on an agent of the corporation in the United States in accordance with forum state's service of process rules and the Due Process Clause of the United States Constitution;[6] (2) service on the corporation overseas by any internationally agreed means of service such as the Hague Service Convention;[7] or (3) service on the corporation overseas as prescribed by the foreign country's law for service, by letter rogatory, or by other means not prohibited by international agreement. E.g., Fed. R. Civ. P. 4(e)(1), (f), (h); U.S. ex rel. Walterspiel v. Gayer AG, No. 15-1459, 2016 WL 233709, at *1 (4th

---

[6] S.C. Code Ann. § 15-9-245 (2015) provides for the service of process on foreign corporations not authorized to do business in South Carolina. It states, in part: "Every foreign business or nonprofit corporation which is not authorized to do business in this State, by doing in this State, either itself or through an agent, any business, . . ., is considered to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising in any court in this State out of or in connection with the doing of any business in this State." Id.

[7] The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361, T.I.A.S. No. 6638 (1969), is a multilateral treaty designed to simplify the methods for serving process abroad to assure that defendants sued in foreign jurisdictions receive actual and timely notice of suit and to facilitate proof of service abroad. Id. Under the Hague Convention, the primary method of service is through the Central Authority established by each member state. However, the Hague Convention does provide for service through alternate channels. Id. at Art. 10.

Cir. Jan. 20, 2016) (citing Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705–08 (1988)). When a defendant challenges the manner or sufficiency of service of process, "[t]he plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003) (citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). "In determining whether the plaintiff has satisfied his burden, the technical requirements of service should be construed liberally as long as the defendant had actual notice of the pending suit." Id. (citing Karlsson v. Rabinowitz, 318 F.2d 666, 668–69 (4th Cir. 1963)).

Upon review of the record, the court finds that Poly-Med completed service of process on both Novus Sweden and Novus Singapore. First, based on the above ruling that Novus Defendants conducted sufficient business in South Carolina such that the exercise of personal jurisdiction over them is constitutionally reasonable, Poly-Med appropriately served Novus Defendants through the South Carolina Secretary of State pursuant to S.C. Code Ann. § 15-9-245 (2015). However, even if Poly-Med's service of process on Novus Defendants was ineffective under § 15-9-245, Poly-Med demonstrated that it served Novus Sweden in Sweden pursuant to Swedish law by providing process to Ms. Ann Engström, an authorized representative for service, on July 1, 2015.[8] (ECF Nos. 38-15 at 3 ¶ 11–4 ¶ 13 & 38-16.) Poly-Med further demonstrated that it served Novus Singapore in Singapore pursuant to Singaporean law by

---

[8] The United States and Sweden are parties to the Hague Convention. See HCCH Members, Hague Conference on Private International Law, https://www.hcch.net/en/states/hcch-members (last visited Feb. 11, 2016). Under Article 10 of the Hague Convention, direct service in Sweden is permitted by judicial officers, officials, other competent persons of the State of origin, and/or any interested persons. 20 U.S.T. 361, T.I.A.S. No. 6638, Art. 10.

14

providing process to Praveen Sidhu, Director, on July 15, 2015.[9]  (ECF No. 39-3 at 1.)  Based on the foregoing, the court finds that Poly-Med sufficiently served Novus Sweden and Novus Singapore[10] under Fed. R. Civ. P. 4 and, therefore, their Motions to Dismiss for Insufficient Service of Process should be denied.

C.     Motion to Dismiss Forum Non Conveniens

   *1. The Parties' Arguments*

Novus Sweden and Novus Singapore move for dismissal of the Complaint pursuant to the doctrine of forum non conveniens.  (ECF Nos. 16 at 21 & 17 at 21.)  Both Defendants argue that an adequate alternative forum exists in Uppsala, Sweden for the following reasons:

> Not only is Novus Sweden amenable to service of process and jurisdiction in Sweden, but it is currently a party in a Swedish lawsuit seeking a declaration of rights under the 2005 Agreement.  It is noted that any claims against Novus Scientific Pte. Ltd. [Singapore] under the 2005 Agreement, which is governed by Swedish law and was signed in Sweden, could also be tried in Uppsala, Sweden.  Additionally, private interest factors warrant dismissing Novus Sweden from this suit, including that the Plaintiff originally agreed that Swedish law would govern any dispute regarding the 2005 Agreement.  Further, Novus Sweden, as a Swedish company, specifically relied on the agreement that Swedish law would govern any dispute regarding the 2005 Agreement when Novus Sweden agreed to accept transfer of the 2005 Agreement from Novus Scientific Pte. Ltd.
>
> Public factors also support dismissing Novus Sweden [and/or Novus Singapore] from this action.  The Swedish court is the forum most at home with Swedish law (a civil law system), which governs the claims arising out of the 2005 Agreement.  Additionally, dismissal of Novus Sweden [and/or Novus Singapore] would avoid the problem of this Court having to apply and interpret Swedish law.  It also would avoid the parties having to engage and fly over Swedish law experts in addition to their respective United States counsel.  Maintaining the case against Novus Sweden [and/or Novus Singapore] could result in inconsistent interpretation in the United States and in Sweden regarding rights and responsibilities under the 2005 Agreement.

---

[9] Singapore is not a party to the Hague Convention.  However, Fed. R. Civ. P. 4(f)(2)(A) provides for service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; . . . ."  Id.  The Singapore Rules of Court allow for personal service on a defendant.  Sing. R. of Ct. O. 10, r. 1.

[10] In its Reply, Novus Singapore admits that it has been served by Poly-Med.  (ECF No. 48 at 15.)

15

(ECF Nos. 16 at 22–23 & 17 at 22–23.)

In opposing the Motion to Dismiss for Forum Non Conveniens, Poly-Med asserts that Novus Sweden and Novus Singapore are unable to establish the adequacy of a foreign forum in Sweden or Singapore. (ECF No. 38 at 31; ECF No. 39 at 31.) Poly-Med further asserts that "[e]ven if there was adequate alternate forum, application of the relevant private and public interest factors in light of the strong deference to which Poly-Med's choice of home forum is entitled, demonstrates that this action must not be dismissed." (Id.)

2. *The Court's Review*

A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947). "The common-law doctrine of forum non conveniens has continuing application in federal courts only in cases where the alternative forum is abroad . . . ." Fid. Bank PLC v. N. Fox Shipping N.V., 242 F. App'x 84, 90 (4th Cir. 2007) (quoting Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430 (2007)). "A federal court may dismiss a case on the ground of forum non conveniens 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" SAS Inst., Inc. v. World Programming Ltd., 468 F. App'x 264, 265 (4th Cir. 2012) (quoting Sinochem Int'l, 549 U.S. at 429).

"The determination of whether dismissal based on forum non conveniens is appropriate requires a two-step analysis." Sonoco Prods. Co. v. Guven, C/A No. 4:12-cv-00790-RBH, 2013 WL 4018612, at *1 (D.S.C. Aug. 6, 2013). "First, it must be determined whether an alternative

forum is adequate and available." Id. (citing DiFederico v. Marriott Intern., Inc., 714 F.3d 796, 800 (4th Cir. 2013); In re Compania Naviera Joanna S.A., 531 F. Supp. 2d 680, 684 (D.S.C. 2007)).  "Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the [foreign] jurisdiction." Fid. Bank PLC, 242 F. App'x at 90 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)).  "A foreign forum is adequate when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Id. (internal quotation marks omitted) (quoting Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991))).

Second, if an alternative forum exists, the court must weigh the private litigants' interest[11] and public interest[12] factors to determine if dismissal is appropriate on forum non conveniens grounds.  Id.  "A party seeking dismissal on grounds of forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." Sonoco Prods. Co., 2013 WL 4018612, at *2 (quoting SAS Inst., Inc., 468 F. App'x at 265).  "The moving party bears the burden not only of showing that an adequate alternate forum exists, but also that the balance of private and public interest factors favors dismissal."  Id. (quoting SAS Inst., Inc., 468 F. App'x at 265).

---

[11] The private interest factors focus on the litigants and include the consideration of the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co., 454 U.S. at 241 n.6 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

[12] The public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Piper Aircraft Co., 454 U.S. at 241 n.6 (quoting Gulf Oil Corp., 330 U.S. at 509).

Upon review, the court observes that Novus Singapore and Novus Sweden have not met their burden of establishing that an adequate alternative forum exists for all defendants. E.g., Galustian v. Peter, 591 F.3d 724, 731 (4th Cir. 2010) ("For a case to be dismissed for forum non conveniens, the alternate forum must be available as to all defendants."); Chattery Int'l, Inc. v. Jolida, Inc., Civil No. WDQ-10-2236, 2012 WL 1454158, at *4 (D. Md. Apr. 24, 2012) ("A Court may dismiss an action on forum non conveniens grounds when (1) there is an alternative, adequate forum that is available to all defendants, . . . .") (citation omitted); Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 290 (S.D.N.Y. 2000) ("[I]n order to grant a motion to dismiss for forum non conveniens, a court must satisfy itself [among other things] that litigation may be conducted elsewhere against all defendants." (quoting PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 73 (2d Cir. 1998))). More specifically, only Novus Singapore and Novus Sweden assert that Sweden provides an adequate alternative forum for this matter. Novus USA has neither moved for forum non conveniens dismissal nor demonstrated any support for the position that a Swedish forum is appropriate and adequate for it. Because they failed to demonstrate that Sweden is an adequate alternative forum for all defendants in this case,[13] Novus Singapore and Novus Sweden are not entitled to dismissal on the grounds of forum non conveniens. For this reason, the court denies the Motions to Dismiss for Forum Non Conveniens.

### IV.    CONCLUSION

For the foregoing reasons, the court **DENIES** Novus Scientific AB's Motion to Dismiss for Lack of Jurisdiction, Insufficient Service of Process, and Forum Non Conveniens (ECF No.

---

[13] In light of this finding, the court does not need to answer the question of whether convenience and judicial efficiency strongly favor litigation in Sweden. E.g., PT United Can Co., 138 F.3d at 73 ("If there is no adequate alternative forum, the inquiry ends, and the motion to dismiss is denied.").

16); **DENIES** Novus Scientific Pte. Ltd.'s Motion to Dismiss for Lack of Jurisdiction, Insufficient Service of Process, and Forum Non Conveniens (ECF No. 17); and **DENIES** Novus Scientific, Inc.'s Motion to Dismiss for Lack of Jurisdiction (ECF No. 18).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

February 22, 2016
Columbia, South Carolina

19