**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | | |
|---|---|---|
| POLY-MED, INC., | ) | Civil Action No.: 8:15-cv-01964-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| NOVUS SCIENTIFIC PTE. LTD, | ) | |
| NOVUS SCIENTIFIC, INC. and | ) | |
| NOVUS SCIENTIFIC AB, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Poly-Med, Inc. ("Plaintiff") filed this action seeking monetary damages and equitable relief from Defendants Novus Scientific Pte. Ltd., Novus Scientific, Inc., and Novus Scientific AB (collectively "Defendants") as a result of alleged violations of the parties' business agreement. (ECF No. 181.)

This matter is before the court pursuant to the parties' Motions for Summary Judgment (ECF Nos. 268, 277) as to their respective tortious interference claims. For the reasons set forth below, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Motion for Summary Judgment Regarding PMI's[1] Tortious Interference Claims.[2]

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On May 8, 2015, Plaintiff commenced the present action against Defendants. (ECF No. 1.) Plaintiff filed its Second Amended Complaint on June 10, 2017, alleging breach of contract, tortious interference with contract, and violation of the South Carolina Unfair Trade Practices Act

---

[1] Plaintiff filed one summary judgment motion addressing all of Defendants' counterclaims (ECF No. 268), while Defendants filed separate summary judgment motions for each of Plaintiff's claims (ECF Nos. 271, 273, 275, 277.)
[2] Defendants refer to Plaintiff as "PMI" in their filings.

("SCUTPA"), S.C. Code Ann. §§ 39-5-10 to -560 (2016). (ECF No. 181 at 14-29.) On August 29, 2017, Defendants filed their Answer, Affirmative and Other Defenses to the Second Amended Complaint and Amended Counterclaims, alleging breach of contract, intentional interference with existing contractual relations, business defamation, violation of SCUPTA, and conversion. (ECF Nos. 197 at 52-66, 198 at 52-63.) On October 5, 2017, Defendants moved for partial summary judgment on Plaintiff's breach of contract causes of action (ECF No. 209), which the court granted on April 24, 2018. (ECF No. 252.) On June 4, 2018, Plaintiff filed a Motion for Summary Judgment on (1) "Plaintiff's claim for a declaration that the [Agreement] . . . is terminated" and (2) all of Defendants' counterclaims. (ECF No. 268 at 1.) On June 13, 2018, Defendants filed a Motion for Summary Judgment Regarding PMI's Tortious Interference Claims. (ECF No. 277.) Defendants filed their Response in Opposition to Plaintiff's summary judgment motion on July 9, 2018. (ECF No. 290.) Also on July 9, 2018, Plaintiff filed its Response in Opposition to Defendants' summary judgment motion on Plaintiff's tortious interference claims. (ECF No. 293.) On August 9, 2018, the court heard argument from the parties on this matter. (ECF No. 357).

The court adopts its prior recitation of the facts from its April 24, 2018 Order and Opinion (ECF No. 252) granting Defendants' Motion for Partial Summary Judgment on Plaintiff's breach of contract claims (ECF No. 209).

## II.  JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Plaintiff's allegations that the action is between citizens of different states and/or countries and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs. (ECF No. 181 at 1 ¶ 1–2 ¶ 4 & 3 ¶ 11.) Specifically, Plaintiff alleges it is a South Carolina corporation with its principal place of business in Anderson, South Carolina; Novus Scientific Pte. Ltd. is a

Singaporean corporation with its principal place of business in Singapore; Novus Scientific, Inc. is a Delaware corporation with its principal place of business in San Diego, California; and Novus Scientific AB is a Swedish corporation with its principal place of business in Uppsala, Sweden. (*Id.*) In this regard, the court is satisfied complete diversity exists between the parties and the amount in controversy is sufficient to confer jurisdiction on this court.

### III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The non-moving party may not oppose a summary judgment motion with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir.

1995).

# IV.    ANALYSIS

## A.  Defendants' Motion for Summary Judgment

The basis of Plaintiff's tortious interference with prospective contractual relations claims is Defendants' alleged "use[], manufactur[e], distributi[on] and s[ale] [of] Select Absorbable Composite Meshes in applications other than hernia repair" in violation of the 2005 Sales and Materials Agreement (the "Agreement") and violation of the Agreement's patent provisions.  (ECF No. 181 at 21–25.)  To state a cause of action for intentional interference with prospective contractual relations,[3] the plaintiff must prove "(1) the defendants intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff."  *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 395 S.E.2d 179, 180 (S.C. 1990).)

Defendants assert they are entitled to summary judgment on these claims because, *inter alia*, Plaintiff has not established it sustained "actual, ascertainable damages" from Defendants' alleged tortious interference.  (ECF No. 277 at 1, 10.)  In its Opposition to Defendants' Motion (ECF No. 277), Plaintiff "acknowledges it cannot be adequately compensated by monetary damages and that its sole remedy is equitable relief in the form of a declaration that the Agreement is terminated with later enforcement of the post-termination provisions of the Agreement."  (ECF No. 293 at 11.)  At the August 9, 2018 hearing on the instant motions, both parties asserted that to the extent identification of ascertainable damages is required to prevail on a claim of tortious

_____

[3] *United Educ. Distribs., LLC v. Educ. Testing Serv.*, 564 S.E.2d 324, 326 n.1 (S.C. Ct. App. 2002) ("Although the trial court identified this action as 'tortious interference with prospective economic advantage,' South Carolina has labeled this tort 'intentional interference with prospective contractual relations.'").

4

interference, neither party's tortious interference claims should survive summary judgment if the party failed to identify ascertainable damages. (ECF No. 381 at 55:19-23, 67:25–68:1-4). However, Plaintiff avers, "There is no basis to believe 'injury' does not include irreparable harm," noting courts in other jurisdictions have granted injunctive relief to stop tortious interference where damages are inadequate. (ECF No. 293 at 12.)

Plaintiff emphasizes that the tort of intentional interference with prospective contractual relations requires proof of *injury* and not *damages*. (*Id.*) But,

> Although the words "damages," "damage," and "injury" are *sometimes used synonymously*, there is a material distinction between them. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm that results from the injury; and damages are the recompense or compensation awarded for the damage suffered. . . . *The above distinctions are not always followed. Sometimes, the words "damage" and "injury" are used interchangeably* and, within legislative meaning and judicial interpretation, import loss, harm, or hurt. Then, "damages" means compensation for the legal injury sustained. It is also said that damages are a measure of injury.

22 Am. Jur. 2d Damages § 2 (emphasis added) (footnotes omitted).

When the South Carolina Supreme Court recognized the intentional interference with prospective contractual relations cause of action, it cited to the Restatement (Second) of Torts.[4] The Restatement (Second) of Torts defines this cause of action as:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for *the pecuniary loss* resulting to the other from the failure of the third person to perform the contract.

---

[4] *See Crandall Corp*, 395 S.E.2d at 180 ("To recover on a cause of action for intentional interference with prospective contractual relations, we hold the plaintiff must prove: (1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff. *See Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293 (Utah 1982); *see also Blake v. Levy,* 191 Conn. 257, 464 A.2d 52 (1983); *Straube v. Larson,* 287 Or. 357, 600 P.2d 371 (1979); Restatement (Second) of Torts § 766B and 767 (1977).")

Restatement (Second) of Torts § 766 (1979) (emphasis added).  Comment t to this section, entitled

"Damages," further explains, "On the elements of *damages* . . . . The cause of action is for

*pecuniary loss resulting from the interference*.  Recovery may be had also for consequential harms

for which the interference was a legal cause."[5]  *Id.* (emphasis added).  Also, in the only case to

reach the issue of "injury" for an intentional interference with prospective contractual relations

claim, the South Carolina Court of Appeals labelled the section addressing the injury element as

"Damages," applied damages law ("This [c]ourt's task in reviewing a damages award is not to

weigh the evidence, but to decide if any evidence exists to support the damages award."), and held

"there is insufficient evidence to support the *damages* award on the intentional interference claim."

*Santoro v. Schulthess*, 681 S.E.2d 897, 905–06 (S.C. Ct. App. 2009) (emphasis added).[6]  Therefore,

---

[5] Equitable relief is permitted under the Restatement (Second) of Torts, but limited to injunctions.
Restatement (Second) of Torts § 766 cmt. u (Am. law Inst. 1979) ("*Equitable relief*. In appropriate
circumstances under the general rules relating to equitable relief (see §§ 933- 951), one may be
enjoined from conduct that would subject him to liability under the rule stated in this section.").
South Carolina has granted injunctive relief on an intentional interference with prospective
contractual relations claim. *See Collins Music Co., Inc. v. Ingram*, 357 S.E.2d 484 (S.C. Ct. App
1987) ("The trial judge was correct in concluding that the question of injunctive relief was moot
concerning any contract between Collins and Griner.  Both Smith's Grocery and Lois' Game Room
have closed, and Griner now has no contractual relationship with Collins with which the
defendants could interfere.  Collins's complaint, however, prays '[t]hat the Defendants be
restrained and enjoined from persuading or inducing Plaintiff's customers to breach or cancel their
contracts made with the Plaintiff.'  Thus, the relief sought by Collins was not confined to an
injunction against interference with Griner's contracts.  At trial, two of Collins's former employees
testified that after leaving Collins they assisted Ingram and Cipolla in attempts to interfere with
contracts between Collins and other customers.  In addition, Collins introduced into evidence one
exclusive contract it had executed with another customer.  Since the pleadings and the evidence
raise the issue of injunctive relief affecting contracts with parties other than Griner, we vacate that
part of the order characterizing injunctive relief as moot and remand to the trial court to determine
whether an injunction should issue.").
[6] The defendant in *Santoro* challenged plaintiff's intentional interference with prospective
contractual relations claim for the same factual and legal reason Plaintiff challenges Defendants'
intentional interference claim in this case: "Schulthess argues that there was insufficient evidence
of damages resulting from his letters to the Santoros' realtors to sustain a claim for intentional
interference with prospective contractual relations."  *Santoro*, 681 S.E.2d at 905.  The South
Carolina Court of Appeals "agree[d]," not only making no comment on how Schulthess framed

the court finds "injury" and "damages" are being used interchangeably under the "limited South Carolina precedent" on claims of intentional interference with prospective contractual relations. *United Educ. Distribs., LLC*, 564 S.E.2d at 328 ("Upon a review of our limited South Carolina precedent, a cause of action for intentional interference with prospective contractual relations generally stands following the loss of an identifiable contract or expectation.").

Accordingly, to prevail on a claim of intentional interference with prospective contractual relations, Plaintiff must "prove the nature and extent of its damages." *Collins Music Co.*, 357 S.E.2d at 485, 486–87 (finding the trial court properly denied recovery on plaintiff's tortious interference claim because plaintiff "failed to prove the nature and extent of its damages"). "[T]he law does not require absolute certainty . . . but only reasonable certainty that the damages are not purely speculative and there exists a fairly accurate method to estimate the lost profits." *Vortex Sports & Entm't, Inc. v. Ware*, 662 S.E.2d 444, 450–51 (S.C. Ct. App. 2008). Here, Plaintiff's own damages expert, Philip Green, stated that while he believed Plaintiff had been harmed,

> [T]here is no way to reliably measure the impact of [Defendants'] interference with [Plaintiff]'s potential business relationships with third parties or the extent of [Plaintiff]'s associated losses. Since it is not possible to reliably calculate the value of [Plaintiff]'s losses, monetary damages cannot adequately compensate [Plaintiff] for these losses.

(ECF No. 277-19 at 26.) Furthermore, Plaintiff "acknowledges it cannot be adequately compensated by monetary damages." (ECF No. 293 at 11.) Therefore, Plaintiff has failed to provide any evidence of its damages to enable Plaintiff to survive summary judgment. *See Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 252.

---

the issue, as one of damages as opposed to injury, but also drawing no distinction between injury and damages. *Id.* at 905–06.

**B. Plaintiff's Motion for Summary Judgment**

Defendants' intentional interference with existing contractual relations claim relies upon letters Plaintiff sent to Defendants' current and former distributors. (ECF No. 197 at 54–56.) On and after March 2 and 3, 2016, Plaintiff sent letters to Defendants' current and former distributors throughout the world who sell and/or use TIGR® Mesh (ECF Nos. 197 at 49 ¶ 60, 51 ¶ 68), stating

> As a result of [Defendants'] breaches of the [Agreement], [Defendants'] license has been terminated. [Defendants] [are] no longer permitted to sell, distribute, manufacture or use TIGR® Mesh. [Defendants'] breaches of the [Agreement] are now the subject of litigation in the United States District Court for the District of South Carolina . . . .
>
> Any purchase by you of TIGR® Mesh from [Defendants] and your subsequent use or resale thereof is a violation of [Plaintiff]'s rights. [Plaintiff] demands that you immediately cease and desist from making any further purchase of TIGR® Mesh from [Defendants].

(ECF No. 290-46 at 1.)

Plaintiff asserts it is entitled to summary judgment on Defendants' tortious interference claim because, *inter alia*, "Defendants have not identified any damages as a result of any terminated distributor agreement." (ECF No. 268-1 at 27.) At the August 09, 2018 hearing on the instant motions, Defendants stated "we have not yet been able to attach an actual ascertainable damages figure to the harm that [Plaintiff]'s tortious interference with [Defendants'] distributor relationships caused." (ECF No. 381 at 55:8-15.)

In South Carolina, the elements of tortious interference with contract are: "1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages." *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 642 S.E.2d 726, 731 (S.C. 2007). Each of the elements is "necessary" to succeed on the claim. *See Collins Entm't Corp. v. Coats & Coats Rental Amusement*, 584 S.E.2d 120, 124 (S.C. Ct. App. 2003) ("ABG asserts Collins failed to prove the elements of intentional interference with contractual

relations. In our view, however, the record has sufficient evidence to support a finding that Collins proved each of the *necessary* elements." (emphasis added)).

Defendants acknowledge they cannot prove damages from Plaintiff's alleged tortious interference from sending the March 2 and 3, 2016 letters to Defendants' current and former distributors. (ECF No. 381 at 55:8-15.) Therefore, Defendant has failed to provide sufficient evidence to survive summary judgment, as proof of damages is a necessary element of a tortious interference claim. *See Collins Entm't Corp.*, 584 S.E.2d at 124. *See also Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 252.

## V.    CONCLUSION

At the August 13, 2018 hearing on the instant motions, both parties asserted that to the extent identification of ascertainable damages is required to prevail on a claim of tortious interference, neither party's tortious interference claims should survive summary judgment if the party failed to identify ascertainable damages. (ECF No. 381 at 55:19-23, 67:25-68:1-4). Accordingly, as both parties have failed to provide sufficient evidence of their damages, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 268) as to this claim and **GRANTS** Defendants' Motion for Summary Judgment Regarding PMI's Tortious Interference Claims (ECF No. 277).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 21, 2018
Columbia, South Carolina