**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | | |
|---|---|---|
| POLY-MED, INC., | ) | Civil Action No.: 8:15-cv-01964-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| NOVUS SCIENTIFIC PTE. LTD, | ) | |
| NOVUS SCIENTIFIC, INC. and | ) | |
| NOVUS SCIENTIFIC AB, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Poly-Med, Inc. ("Plaintiff") filed this action seeking monetary damages and equitable relief from Defendants Novus Scientific Pte. Ltd., Novus Scientific, Inc., and Novus Scientific AB (collectively "Defendants") as a result of alleged violations of the parties' business agreement. (ECF No. 181.)

This matter is before the court pursuant to Plaintiff's Motion for Summary Judgment (ECF No. 268). For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART**[1] Plaintiff's Motion for Summary Judgment (ECF No. 268).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The court adopts its prior recitation of the facts from its April 24, 2018 Order and Opinion (ECF No. 252) granting Defendants' Motion for Partial Summary Judgment (ECF No. 209) on Plaintiff's hernia only and patent application breach of contract claims. As brief background, in June 2005, Plaintiff and Radi Medical Systems AB ("Radi AB"), a Swedish corporation in

---

[1] Plaintiff's summary judgment motion addresses all of Defendants' counterclaims. (ECF No. 268.) The only subject of this Order are Defendants' breach of contract counterclaims regarding sale or licensing of mesh, chemical composition, and manufacturing processes and commercial exploitation of information, test results, and documentation with respect to testing.

Uppsala, Sweden, entered into a Sale of Materials and License Agreement (the "Agreement") for

the development and manufacture of Absorbable Composite Meshes. (ECF No. 181 at 4-5.)

Pursuant to this Agreement, Plaintiff manufactured and Defendants developed and sold

TIGR®Matrix Surgical Mesh ("TIGR®Mesh"). (*Id.* at 9 ¶ 42-46.) In December 2008, Radi AB

assigned the Agreement to Novus Scientific Pte. Ltd. or Novus Scientific, Inc., which own

subsidiaries Novus Scientific AB and Novus Scientific, Inc. (*Id.* at ¶ 19-20).

> Under Section 5 of the Agreement,
>
> Unless [Defendants'] exclusive right terminates as provided in this Section 5, [Plaintiff] shall not sell, donate or otherwise transfer, or license or grant any rights in or to the Select Absorbable Composite Hernial Mesh (including but not limited to its chemical composition or manufacturing processes) to any other person or company for any purpose whatsoever without [Defendants'] prior written consent, the granting of which shall be in [Defendants'] sole and absolute discretion, and shall use its best efforts to keep the chemical composition, manufacturing processes, and [Plaintiff] Know-How employed to create, develop or manufacture such Select Absorbable Composite Meshes a proprietary trade secret (but this obligation shall not prevent [Plaintiff] from filing patent applications with respect to the Select Absorbable Composite Meshes).

(ECF No. 268-H at 71370.)[2]

On January 15, 2007, Dr. Torbjorn Mathisen, Senior Scientist of Novus Scientific AB,[3]

emailed Dr. Shalaby with several questions, including one about a suture product made using

SMC-7, one of the two polymers used in TIGR®Mesh:

---

[2] As a result of an apparent filing error, not all of the exhibits attached to Plaintiff's Motion for Summary Judgment (ECF No. 268) appear on the docket. Plaintiff moved to have the majority of these exhibits sealed (ECF No. 267), which the court granted (ECF No. 287). All of the exhibits to Plaintiff's Motion for Summary Judgment that were sealed do not appear on the docket. Therefore, the court has cited these exhibits by their given letter and any page number that appears on the bottom of the page. For those exhibits without page numbers, the court has assigned a number, starting with the title page of the exhibit.

[3] In his declaration, Dr. Mathisen states that in 2004, he and Henrik Magnusson began inventing what would become TIGR®Mesh. (ECF No. 126-2 at 1-3.) Magnusson "was [the] Global product manager on Novus Scientific AB from 2009 until 2014." (ECF No. 126-13 at 1.)

During our last visit[,] we discussed a suture made from the same material as used in the long[-]lasting multifilament in the surgical mesh (SMC-7). I think the name was Osseoprim and it was FDA registered according to your information. I have searched for the 510K filing on [the] FDA[']s homepage, but cannot find such a suture.[4]

(ECF No. 268-EE at 39020.) That same day, Plaintiff responded to Dr. Mathisen's inquiries with a memo identifying the product Dr. Mathisen called "Osseoprim" as "Osteoprene" and informing him of the registration number of the 510K application. (ECF No. 268-FF at 39833.) Dr. Mathisen again inquired about Osteoprene on October 23, 2008, this time in reference to developing a similar suture product. (ECF No. 268-GG at 6157.) Then, on November 6, 2009, Dr. Mathisen, for a

---

[4] In his deposition, Dr. Mathisen elaborated on this inquiry:

| Q. | [Plaintiff] used SMC-7 in other products, right? |
|---|---|
| . . . . | |
| [Dr. Mathisen] | Yes. Now I am not sure it was the SMC-7, but I asked [Dr.] Shalaby whether [Plaintiff] had used that polymer in any product that was approved by the FDA. Then [Dr.] Shalaby said that Bruce Anneaux will look into this – it was a person working at [Plaintiff] at the time – and he later wrote me an email saying that the SMC-7 was used as a ligature in a suture anchor which was sold by a company, and I can't recall whether it was a German company or U.S. company. |

(ECF 290-21 at 129.)

3

third time, inquired about Osteoprene in an email on which Magnusson and Dr. Roger Johansson[5]

were copied, but did not mention the polymers used in Osteoprene. (ECF No. 301-I at 1-2.)[6]

In addition to inquiring about Osteoprene, earlier in 2008, Dr. Mathisen, emailed Thomas

Engstrom, Chief Executive Officer (CEO) of Novus Scientific Pte. Ltd.,[7] and Magnusson,

expressing a desire

> to expand the current [A]greement so we can actually use [TIGR®Mesh] for
> applications other than hernias. As the current [A]greement is worded, we only
> have rights to the mesh for the hernia indication. . . . Sat with [Dr.] Roger
> [Johansson] yesterday and reviewed the [A]greement. I will be writing down a few
> things that we would like to amend and for you and [Dr. Johansson] to look over
> before we take up these items with [Dr.] Shalaby.

(ECF No. 268-Z at 5509.) During his deposition on May 17, 2018, Dr. Mathisen stated he was not

"completely familiar with the [A]greement," and that apart from himself and the Regulatory

Department, he did not know if anyone else was aware that SMC-7 was being used in Osteoprene.

(ECF 290-21 at 133.)

---

[5] Dr. Roger Johansson

> was Director of Intellectual Property Rights at Radi . . . AB from 2001 to 2009.
> [He] was the site manager of Novus Scientific from September 2009 to April 2012,
> and then Quality Assurance, Regulatory Affairs, Legal and Intellectual Property
> Rights Manager of Novus Scientific AB until July or August 2014.

(ECF No. 126-24 at 1.) A letter addressed to Dr. Johansson from William Matthews, the Vice
President of Manufacturing at Plaintiff, also indicates Dr. Johansson was the Vice President of
Novus Scientific AB in 2010. (ECF No. 271-7.)

[6] A situation similar to what occurred with the sealed exhibits to Plaintiff's Motion for Summary
Judgment (ECF No. 268) occurred with Plaintiff's Reply in Support of its Motion for Summary
Judgment (ECF No.). The unredacted versions of the sealed exhibits to Plaintiff's Reply were
provided to the court by email. The court has identified these exhibits by their given letter and any
page number that appears on the bottom of the page. For those exhibits without page numbers,
the court has assigned a number, starting with the title page of the exhibit.

[7] (ECF No. 16-1 at 1.)

Two years later on April 20, 2010, during a meeting between Plaintiff and Defendants, Dr. Shalaby "mentioned that he [wa]s working on a short-term resorbable mesh for another company. He would not specify the polymer, the product or the polymer, other than to say that mesh would absorb in less than four weeks and was to be used to 'make a pouch.'" (ECF No. 268-HH at 65843.) Defendants speculated the pouch was for "a pacemaker/ICD pouch." (*Id.*)

On August 4, 2010, in an email to James Archetto, President of Novus Scientific, Inc., Thomas Engstrom, CEO of Novus Scientific Pte. Ltd., wrote,

> [Dr. Shalaby] is obviously not aware of the fact that he has already breached the [Agreement] by using confidential info from us on the mesh design by filing his own patents on the same basic concept. [F]ortunately we soon can spin our own fibres – without any confidential info from [Dr. S]halaby or [S]hawn [Peniston]. We plan to test knit in Europe by [the] end of the year. Hopefully we can have a knitting machine delivered first Q 2011 and after that it will not be long until we can tell [Dr. Shalaby] to F….k off.

(ECF No. 268-KK at 146872.)

On May 8, 2015, Plaintiff commenced the present action against Defendants. (ECF No. 1.) Plaintiff filed its Second Amended Complaint on June 10, 2017, alleging breach of contract, tortious interference with contract, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 to -560 (2016). (ECF No. 181 at 14-29.) On August 29, 2017, Defendants filed their Answer, Affirmative and Other Defenses to the Second Amended Complaint and Amended Counterclaims, alleging breach of contract, intentional interference with existing contractual relations, business defamation, violation of SCUPTA, and conversion. (ECF Nos. 197 at 52-66, 198 at 52-63.) On October 5, 2017, Defendants moved for partial summary judgment on Plaintiff's breach of contract claims (ECF No. 209), which the court granted on April 24, 2018, as to Plaintiff's "hernia only" and "patent application" breach of contract claims (ECF No. 252.) On June 4, 2018, Plaintiff filed a Motion for Summary Judgment on (1) "Plaintiff's

claim for a declaration that the [Agreement] . . . is terminated" and (2) all of Defendants' counterclaims. (ECF No. 268 at 1.) Defendants submitted their Response in Opposition on July 9, 2018. (ECF No. 290.) On July 23, 2018, Plaintiff filed its Reply in Support. (ECF No. 301.) The court heard argument from the parties on this matter on August 9, 2018. (ECF No. 357). On August 21, 2018, the court granted Plaintiff's summary judgment motion in part as to Defendants' tortious interference claim and granted Defendants' Summary Judgment Motion Regarding PMI's Tortious Interference Claims.[8] (ECF No. 404.) On August 27, 2018, the court denied Plaintiff's summary judgment motion in part as to Plaintiff's declaratory judgment action because declaratory judgment is a remedy that must accompany a valid cause of action. (ECF No. 412.) The causes of action for which Plaintiff had requested declaratory relief were previously disposed of by the court on Defendants' summary judgment motion regarding Plaintiff's hernia only and patent application breach of contract claims. (ECF No. 252.) Therefore, the court also dismissed Plaintiff's declaratory judgment action. (ECF No. 412.)

## II. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) based on Plaintiff's allegations that the action is between citizens of different states and/or countries and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs. (ECF No. 181 at 1 ¶ 1–2 ¶ 4 & 3 ¶ 11.) Specifically, Plaintiff alleges it is a South Carolina corporation with its principal place of business in Anderson, South Carolina; Novus Scientific Pte. Ltd. is a Singaporean corporation with its principal place of business in Singapore; Novus Scientific, Inc. is a Delaware corporation with its principal place of business in San Diego, California; and Novus Scientific AB is a Swedish corporation with its principal place of business in Uppsala, Sweden.

---

[8] Defendants refer to Plaintiff as "PMI" in their filings.

(*Id.*) In this regard, the court is satisfied complete diversity exists between the parties and the amount in controversy is sufficient to confer jurisdiction on this court.

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). The non-moving party may not oppose a summary judgment motion with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(c) (1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 256; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required to survive summary judgment is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## IV. ANALYSIS

Under South Carolina law,[9] "An action for breach of contract must be commenced within three years." *CoastalStates Bank v. Hanover Homes of S.C., LLC*, 759 S.E.2d 152, 156 (S.C. Ct. App. 2014) (citing S.C. Code Ann. § 15-3-530(1) (2017)). "Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence." *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998). The exercise of reasonable diligence requires the injured party to "act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *True v. Monteith*, 489 S.E.2d 615, 616–17 (S.C. 1997). The test is not "whether the particular plaintiff actually knew he had a claim," but "whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist." *Majstorich v. Gardner*, 604 S.E.2d 728, 732 (S.C. Ct. App. 2004) (quoting *Young v. South Carolina Dep't of Corr.*, 511 S.E.2d 413, 416 (S.C. Ct. App. 1999)).

Defendants assert Plaintiff breached the Agreement by

> refusing to recognize and give [Defendants] the benefit of the operative license and/or the benefit of the bargain, including but not limited to [(1)] improperly selling, donating, otherwise transferring, or licensing or granting rights in or to mesh (including but not limited to its chemical composition or manufacturing processes) to one or more third parties without the prior written consent of [Defendants], [(2)] improperly publishing (and/or allowing to be published) and/or disclosing (and/or allowing to be disclosed) information in connection with the

---

[9] In its order granting Defendants' Motion for Summary Judgment on Plaintiff's hernia only and patent application breach of contract claims (ECF No. 209), the court found South Carolina law governed the selection and application of the appropriate statute of limitations because, "While choice of law provisions, such as the Swedish law provision of the Agreement, govern substantive issues with the contract, the law of the forum state governs purely procedural issues," (ECF No. 252 at 8 (citing *Stern v. Shelley*, 781 F. Supp. 2d 281, 284 (D.S.C. 2011))), and statute of limitations issues are "generally procedural." (*Id.* (quoting *Thornton v. Cessna Aircraft Co.*, 703 F. Supp. 1228, 1230 (D.S.C. 1988)).)

subject matter of the . . . Agreement, the chemical composition, manufacturing processes, and/or "[Plainitff] Know-How employed to create, develop or manufacture" mesh, [(3)] improperly asserting that [Defendants] are in breach, [(4)] improperly asserting that the . . . Agreement has been terminated, and [(5)] improperly attempting to "terminate" the . . . Agreement (which [Defendants] dispute resulted in any such termination).

(ECF Nos. 184 at 51-52; 185 at 51-52.)

## A. Breach of Contract Counterclaims Regarding Plaintiff's Sale or Licensing of Mesh, Chemical Composition, and Manufacturing Processes

Plaintiff argues it "simply would not, and could not, agree to not license SMC-7 to other customers when it was doing exactly that when the Agreement was executed." (ECF No. 268-1 at 23.) Moreover, Plaintiff asserts Defendants claims are barred by the statute of limitations because Defendants knew Plaintiff was selling or licensing the polymers used to make TIGR®Mesh as early as 2007, citing the aforementioned communications about Osteoprene by Dr. Mathisen. (*Id.*) However, Defendants argue there is no evidence anyone in *management* knew or had reason to know Plaintiff was using SMC-7 "in a non-competitive product," and dispute whether Dr. Mathisen's knowledge can be imputed to Defendants because Dr. Mathisen "was not and is not an officer, director, or managing agent of Defendants." (ECF No. 290 at 15.)

In South Carolina, "Generally, [a]gency is a question of fact." *Froneberger v. Smith*, 748 S.E.2d 625, 631 (S.C. Ct. App. 2013) (alteration in original) (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 752 (S.C. Ct. App. 1984)).[10] Ordinarily, a court should decline to resolve agency questions on summary judgment if "*any* facts giv[e] rise to an inference of an agency relationship." *Bank of New York Mellon Tr. Co. v. Grier*, 785 S.E.2d 208, 212 (S.C. Ct. App. 2016) (alteration in original) (quoting *Fernander v. Thigpen*, 293 S.E.2d 424, 425 (S.C.

---

[10] South Carolina law would still be applicable to this issue, as its resolution is necessary to determine whether Defendants' claim is barred by the statute of limitation, which, as previously discussed, does not implicate the substance of the Agreement.

1982).  "If any facts tend to prove an agency relationship, then the question becomes one for the jury and granting summary judgment is inappropriate."  *Id.* at 212.

The court finds Plaintiff has identified facts tending to prove an agency relationship between Dr. Mathisen and Defendants.[11]  (*See* ECF No. 268-EE at 39020; 268-GG at 6157; ECF No. 301-I at 1-2; 268-Z at 5509.)  That being the case, under South Carolina law, it is a jury question whether Dr. Mathisen was an agent of Defendants, such that his knowledge could be imputed to Defendants for the purpose of determining whether Defendants' breach of contract counterclaims regarding Plaintiff's sale or licensing of mesh, chemical composition, and manufacturing processes are barred by the statute of limitations.[12]  *See Grier*, 785 S.E.2d at 212; *Maher*, 500 S.E.2d at 207 ("The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action.").  *See also S.C. Law Enf't Div. v. Michael & Lance (68 Foot Double Net Shrimp Trawler, White Hull with Black Trim, N. Carolina Fisheries License No. AC-892)*, 327 S.E.2d 327, 328 (S.C. 1985) ("A corporation can not [sic] know anything nor do anything except through its agents."); *Crystal Ice Co. of Columbia v. First Colonial Corp.*, 257 S.E.2d 496, 497 (S.C. 1979) ("It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting

---

[11] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Froneberger*, 748 S.E.2d at 631 (S.C. Ct. App. 2013) (quoting Restatement (Third) of Agency § 1.01 (2006)).  "A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts." *McCall v. Finley*, 362 S.E.2d 26, 29 (S.C. Ct. App. 1987). "The existence of an agency relationship is . . . determined by the relation, the situation, the conduct, and the declarations of the party sought to be charged as principal." *Langdale v. Carpets*, 717 S.E.2d 80, 83 (S.C. Ct. App. 2011).

[12] Henrik Magnusson and Dr. Johansson, who both served in a variety of management positions for Defendants, were copied on one of the aforementioned communications about Osteoprene cited by Plaintiff (ECF No. 268-Z at 5509).  But, as the court noted, this email did not mention that SMC-7 was used to make Osteoprene.

within the scope of his authority."); *Citizens Bank v. Heyward*, 133 S.E. 709 (1925) (holding notice to agent is notice to principal). Accordingly, the court denies Plaintiff's summary judgment motion on this claim.

**B. Breach of Contract Counterclaims Regarding Plaintiff's Commercial Exploitation of Information, Test Results, and Documentation with Respect to Testing**

Under Section 7(b) of the Agreement,

> All information, test results and documentation with respect to the testing, by or for [Defendants], of the Absorbable Composite Meshes for hernial repair shall be proprietary and belong exclusively to [Defendants], and [Plaintiff] shall have no right, title or interest therein. Any such information acquired by Dr. Shalaby or any other officer, director, shareholder, employee or agent of [Plaintiff] shall be employed by such person or entity solely for purposes of providing professional technical services for [Defendants] and/or developing an Absorbable Composite Mesh suitable for [Defendants'] use as provided herein, shall not otherwise be commercially exploited, and shall not be disclosed to any other person or entity (other than pursuant to court or governmental order).

(ECF No. 268-H at 71373-74.)

Plaintiff contends Defendants' breach of contract counterclaims regarding Plaintiff's exploitation of information, test results, and documentation with respect to testing are barred by the statute of limitations, citing the aforementioned August 4, 2010 communication between Thomas Engstrom, CEO of Novus Scientific Pte. Ltd., and James Archetto, President of Novus Scientific, Inc., in which Engstrom opined Plaintiff had breached the Agreement "by using confidential info from us on the mesh design by filing his own patents on the same basic concept." (ECF No. 268-KK at 1.) As a result, Plaintiff contends that more than three years before this action was filed, Defendants were on notice of the alleged breaches by Plaintiff, namely, "improperly publishing (and/or allowing to be published) and/or disclosing (and/or allowing to be disclosed) information in connection with the subject matter of the . . . Agreement, the chemical composition,

manufacturing processes, and/or '[Plainitff] Know-How employed to create, develop or manufacture' mesh," (ECF No. 184 at 51-52; 185 at 51-52). (ECF No. 268-1 at 25-26.)

Engstrom's email to Archetto, shows two things: one, Engstrom had already discovered what he believed to be a breach of the Agreement ("[Dr. Shalaby] is obviously not aware of the fact that he has already breached the [Agreement] by using confidential info from us on the mesh design by filing his own patents on the same basic concept."); and two, Engstrom chose not to act on the believed breach because Defendants were dependent on Plaintiff's manufacturing services ("[F]ortunately we soon can spin our own fibres – without any confidential info from [Dr. S]halaby or [S]hawn [Peniston]. We plan to test knit in Europe by [the] end of the year. Hopefully we can have a knitting machine delivered first Q 2011 and after that it will not be long until we can tell [Dr. Shalaby] to F….k off."). (ECF No. 268-KK at 1.) This is the opposite of "act[ing] with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *True*, 489 S.E.2d at 616–17.

Accordingly, based on the evidence viewed in the light most favorable to Defendants, the court concludes Defendants should have known through the exercise of reasonable diligence that its breach of contract claims regarding commercial exploitation of information, test results, and documentation with respect to testing existed as early as August 2010. However, Defendants never filed their own breach of contract claims against Plaintiff, and asserted these breach of contract counterclaims almost six years later in 2016. (ECF Nos. 82, 83, 84.) For this reason, the court finds Plaintiff is entitled to summary judgment on Defendants' breach of contract claims regarding commercial exploitation of information, test results, and documentation with respect to testing because these claims are barred by the three year statute of limitations found in S.C. Code Ann. §

15-3-530(1) (2017).

## V. CONCLUSION

Upon careful consideration of the entire record, as to Defendants' breach of contract claims regarding commercial exploitation of information, test results, and documentation with respect to testing, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 268). As to Defendants' breach of contract claims regarding sale or licensing of mesh, chemical composition, and manufacturing processes, the court **DENIES IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 268).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 31, 2018
Columbia, South Carolina